## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DAVID NORMAN**

      **Petitioner,**

**v.**                             **Case No. 8:17-cv-2075-T-02JSS**

**SECRETARY, Department of Corrections,**

      **Respondent.**

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

David Norman petitions for the writ of habeas corpus under 28 U.S.C.

§ 2254 (Dkt. 1) and challenges the validity of his state convictions for attempted

lewd molestation, showing obscene material to a minor, and contributing to the

delinquency of a minor, for which convictions Mr. Norman serves fifteen years

imprisonment.  The Respondent admits the petition's timeliness.  (Dkt. 9 at 5).

## Background and Procedural history[1]

Mr. Norman lived with his girlfriend and her twelve-year-old daughter ("the

victim").  Mr. Norman showed the victim pornographic videos on multiple

---

[1] This factual summary derives from Mr. Norman's brief on direct appeal and the record.  (Dkt. 10, Exs. 1 and 5).

occasions and encouraged her to masturbate.  He gave the victim a vibrator and touched her on the vagina with both the vibrator and his hand.  The victim eventually told her mother what happened and the mother contacted the police.  Mr. Norman was arrested and charged with lewd and lascivious molestation (counts one and two), showing obscene material to a minor (count three), and contributing to the delinquency of a minor (count four).  Mr. Norman proceeded to trial and was convicted by a jury of the lesser-included offense of attempted lewd molestation on counts one and two and of showing obscene material to a minor (count three).[2]  He was sentenced to fifteen years imprisonment.  The state appellate court affirmed the convictions and sentences on direct appeal.

## **Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Mr. Norman's petition.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

---

[2] Before trial Mr. Norman successfully moved to sever count four (contributing to the delinquency of a minor) and pleaded guilty to that charge.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (quoting *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (quoting *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell*, 535 U.S. at 694.  A federal court must afford due deference to a state court's decision.  "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a

vehicle to second guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt' . . . .") (citations omitted).  When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").  When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning."  *Id*.  "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ."  *Id*.

In a *per curiam* decision without a written opinion, the state appellate court on direct appeal affirmed Mr. Norman's convictions and sentences.  (Dkt. 10, Ex. 2).  In another *per curiam* decision without a written opinion, the state appellate court affirmed the denial of Mr. Norman's subsequent Rule 3.850 motion for

post-conviction relief.  (Dkt. 10, Ex. 3).  The state appellate court's *per curiam*

affirmances warrant deference under Section 2254(d)(1) because "the summary

nature of a state court's decision does not lessen the deference that it is due."

*Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*,

278 F.3d 1245 (2002); *see also Richter*, 562 U.S. at 99 ("When a federal claim has

been presented to a state court and the state court has denied relief, it may be

presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state law procedural principles to the contrary."); *Bishop v.*

*Warden*, 726 F. 3d 1243, 1255-56 (11th Cir. 2013) (describing the difference

between an "opinion" or "analysis" and a "decision" or "ruling" and explaining

that deference is accorded the state court's "decision" or "ruling" even absent an

"opinion" or "analysis").

    As *Pinholster* explains, review of the state court decision is limited to the

record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record
> that was before the state court that adjudicated the claim on the merits.
> Section 2254(d)(1) refers, in the past tense, to a state court adjudication
> that "resulted in" a decision that was contrary to, or "involved" an
> unreasonable application of, established law. This backward looking
> language requires an examination of the state court decision at the time
> it was made. It follows that the record under review is limited to the
> record in existence at that same time, i.e., the record before the state
> court.

563 U.S. at 181–82.  Mr. Norman bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Mr. Norman's post-conviction claims warrants deference in this case.

### Ineffective Assistance of Counsel

Mr. Norman claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Sims* explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second,

> the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

155 F.3d at 1305. *Strickland* requires proof of both deficient performance and consequent prejudice. 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.

Mr. Norman must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To meet this burden, Mr. Norman must show "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Id*. at 690-91.  Mr. Norman cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*)  ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The required extent of counsel's investigation was addressed in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d), Mr. Norman must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106; *see also Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of Strickland and [the] AEDPA."); *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to

overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is  governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'").

Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Mr. Norman cannot meet the "contrary to" test in Section 2254(d)(1).  Mr. Norman instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal petition for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable.  *Putman v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001).  The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground One**

Mr. Norman contends that his trial counsel rendered ineffective assistance by not objecting to an "unwarranted permissible lesser jury instruction of criminal

attempt that was not charged in the [I]nformation or supported by the evidence at trial." (Dkt. 1 at 8). Mr. Norman argues that "the State failed to charge all the elements for attempt" and that "the permissible lesser jury instruction of attempt as to counts one and two . . . allowed Petitioner to be convicted of lesser criminal attempt that was not charged in the information and denied Petitioner his right to present evidence or witnesses in [d]efense of the charge of criminal attempt." (Dkt. 1 at 9 and 10). Mr. Norman claims that the outcome of the trial could have been different if his trial counsel had objected to the jury instruction on attempted lewd molestation.

The state post-conviction court denied this ground as follows:

In claim 1, Defendant argued that trial counsel was ineffective for failing to object to the permissible lesser jury instruction for attempted lewd molestation. Defendant claims that the evidence either showed a completed act or no criminal act at all. The State responded that the Defendant's claim is conclusory, that it is procedurally barred as it could have been and in fact was raised on direct appeal, and that the record refutes the Defendant's claim.

. . . .

Based on the above, it is ORDERED AND ADJUDGED that the Defendant's Amended Motion for Postconviction Relief is hereby DENIED.

(Dkt. 10, Ex. 10 at 2–3).

To show that trial counsel rendered ineffective assistance by not objecting to a jury instruction, Mr. Norman must show that (1) the instruction was improper,

(2) a reasonably competent attorney would have objected to the instruction, and (3) the failure to object prejudiced him. *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir. 1988).  Mr. Norman fails to satisfy these requirements.  As the State argued, *inter alia*, in its response to Mr. Norman's Rule 3.850 motion,  Mr. Norman challenged in his motion for a new trial the sufficiency of the evidence to sustain the verdicts for attempted lewd molestation and the trial judge "specifically held that the evidence was sufficient to sustain the verdicts." (Dkt.10, Ex. 11 at 11).  The state post-conviction court adopted the State's response in denying Mr. Norman's claim of ineffective assistance of counsel in the Rule 3.850 motion. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).   Mr. Norman cites no Florida case invalidating the jury instruction given in his case.  He demonstrates neither that the instruction was "defective" under state law nor that a reasonable probability exists that the outcome of his trial would have been different had counsel objected to the jury instruction on the permissive lesser-included offense. Accordingly, because he cannot demonstrate prejudice under *Strickland*, Mr. Norman fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. 28 U.S.C. § 2254(d)(1), (d)(2).

**Grounds Two, Three, and Four**

In Ground Two Mr. Norman contends that his trial counsel rendered ineffective assistance by not objecting "to the inadmissible hearsay testimony" of Detective Allen Hogan as to the veracity and truthfulness of the victim's statements to the Child Protection Team.  Mr. Norman argues that, even if the challenged testimony "was not hearsay, [it] would still be inadmissible as evidence under the Florida [E]vidence [C]ode as evidence of a truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence and inadmissible as one witness cannot testify as to the credibility of another witness."  (Dkt. 1 at 13).

In Ground Three Mr. Norman contends that his trial counsel rendered ineffective assistance by not objecting to Detective Hogan's "inadmissible testimony . . . as to the veracity and truthfulness of witness Angel Gold . . . ." (Dkt. 1 at 15).  Mr. Norman alleges that Detective Hogan's testimony improperly bolstered Angel Gold's credibility and that Detective Hogan "used his position as a police [d]etective and the lead investigator in the [c]ase to personally vouch for her credibility at trial [by] using his experience and training that was provide[d] to the jury during his testimony."  (*Id*.).

In Ground Four Mr. Norman contends that his trial counsel rendered ineffective assistance by not objecting to Detective Hogan's "inadmissible testimony . . . as to the veracity and truthfulness of the victim that bolstered her credibility . . . ." (Id. at 19). Mr. Norman argues that such testimony violated the trial court's rulings on the parties' motions *in limine*.

Mr. Norman presented these same allegations to the state post-conviction court in grounds two through six of his Rule 3.850 motion. (Dkt. 10, Ex. 9 at 20–31). The state post-conviction court summarily denied relief on the grounds as follows:

> Claims 2-6 involve the actions of Detective Allen Hogan. In claims 2 and 3, Defendant argues that Det. Hogan improperly bolstered the testimony of the victim and her mother. The State argued that the Defendant has failed to establish deficient performance or prejudice. The State further went on to argue that trial counsel did not emphasize the improper testimony by objecting and the State did not capitalize on the testimony.
>
> In claims 4-6, Defendant argues that Det. Hogan violated numerous Motion in Limine rulings. The State argues that the Defendant's claims are conclusory and that he has not established deficient performance or prejudice.
>
> Based on the above, it is ORDERED AND ADJUDGED that the Defendant's Amended Motion for Postconviction Relief is hereby DENIED.

"[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (explaining that "[s]tate courts are

15

the ultimate expositors of state law," and federal courts must abide by their rulings

on matters of state law) (citations and footnote omitted).  "Although an ineffective

assistance of counsel claim is a federal constitutional claim, which we consider in

light of the clearly established rules of *Strickland*, when 'the validity of the claim

that [counsel] failed to assert is clearly a question of state law, . . . we must defer to

the state's construction of its own law.'" *Will v. Sec'y, Dep't of Corr.*, 278

F. App'x 902, 908 (11th Cir. 2008), explains:

> Although an ineffective-assistance-of-counsel claim is a *federal*
> constitutional claim, which we consider in light of the clearly
> established rules of *Strickland*, when "the validity of the claim that
> [counsel] failed to assert is clearly a question of *state* law, . . . we must
> defer to the state's construction of its own law." *Alvord v. Wainwright*,
> 725 F.2d 1282, 1291 (11th Cir. 1984) (affording deference to state
> court's decision "to the extent it decide[d] the validity of [the
> petitioner's] underlying state law claims") (emphasis added)
> (*superseded on other grounds*); *see also Callahan v. Campbell*, 427
> F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental
> principle that state courts are the final arbiters of state law, federal
> habeas courts should not second-guess them . . . [.]" (quotation and
> omitted)).  Put another way, "[a] state's interpretation of its own laws
> or rules provides no basis for federal habeas corpus relief, since no
> question of a constitutional nature is involved." *McCullough v.
> Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *Hunt v. Tucker*, 93 F.3d
> 735, 737 (11th Cir. 1996) (federal courts entertaining petitions for writs
> of habeas corpus must follow the state court's interpretation of a state
> law absent a constitutional violation).

*See also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005)

("The Florida Supreme Court already has told us how the issues would have been

resolved under state law had [the petitioner's counsel] done what [the petitioner]

argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

The basis for Mr. Norman's grounds of ineffective assistance of trial counsel is counsel's failure to object under state evidentiary rules to the admissibility of Detective Hogan's trial testimony.  Both the state post-conviction court in rejecting Mr. Norman's grounds of ineffective assistance of counsel and the state appellate by affirming that rejection have answered the question of what would have happened if counsel had objected to the testimony on hearsay grounds as Mr. Norman suggests.  (Dkt. 10, Exs. 10 and 14).  The state courts' interpretation of state law is afforded deference.  Because the state post-conviction court and the state appellate court concluded that the trial judge properly applied state law, Mr. Norman establishes neither deficient performance nor resulting prejudice from counsel's alleged error.  *Strickland*, 466 U.S. at 691–92.  Mr. Norman fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting these grounds.  28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Five**

Mr. Norman contends that his appellate counsel rendered ineffective assistance by not arguing on direct appeal that the trial court erred by admitting evidence of collateral crimes without making the findings required under state law. Mr. Norman alleges that if his appellate counsel had raised this claim on direct appeal and had argued that fundamental error occurred, the outcome of his direct appeal would have been different.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (*per curiam*) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992)). To establish a claim of ineffective assistance of appellate counsel, Mr. Norman must show that appellate counsel performed deficiently and that the deficient performance resulted in prejudice. To demonstrate deficient performance, Mr. Norman must show that appellate counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To demonstrate prejudice, Mr. Norman must show that a reasonable probability exists that, but for appellate counsel's unreasonable failure to file a merits brief, he would have prevailed on appeal. *Robbins*, 528 U.S. at 285–86.

While Mr. Norman's ineffective assistance of appellate counsel claim is of federal constitutional dimension, his underlying claim of trial court error based on the admissibility of evidence under state rules of evidence is a matter of state law. The state district court of appeal in rejecting this same ground of ineffective assistance of appellate counsel in Mr. Norman's state habeas petition has answered the question of what would have happened if appellate counsel had raised this ground on direct appeal.  *See, e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law]—the objection would have been overruled . . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").  Accordingly, Mr. Norman shows neither deficient performance nor resulting prejudice from appellate counsel's decision not to raise the alleged trial court error claim on direct appeal.  Ground Five warrants no relief because the elements of *Strickland* remain unsatisfied and Mr. Norman fails to meet his burden of proving that the state court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts by rejecting this ground for relief.  *See* 28 U.S.C. § 2254(d)(1), (2).

**Ground Six**

Mr. Norman contends that his appellate counsel rendered ineffective assistance by not arguing on direct appeal that the trial court erred by (1) *sua sponte* closing the courtroom during sentencing while a *Williams* Rule[3] witness testified and (2) allowing and considering collateral crimes evidence of prior acts of abuse against the *Williams* Rule witness.  The state appellate court denied this ground in Mr. Norman's state habeas petition.  (Dkt. 10, Ex. 19).

(1) Courtroom closure

The record shows that during the sentencing hearing the sentencing judge cleared the courtroom before the *Williams* Rule witness testified:

> [PROSECUTOR]: Your Honor, the State would first call [redacted].
>
> THE COURT: Okay let's have [redacted] come on up.
>
> [PROSECUTOR]: I believe she's actually outside the courtroom.  Your Honor, would we be able to have the Defendant placed somewhere aside from right where the vic - - where the witness is going to be?
>
> . . . .
>
> THE COURT: Yeah, Mr. Norman can step over to the jury box.  If he needs to consult with his attorney we're going to give [counsel] a chance to consult with him, Counsel approach.
>
> (Whereupon, Judge and counsel have bench conference)

---

[3] Under the *Williams* Rule, evidence of a collateral crime or an act factually similar to the charged offense is admissible "[i]f found to be relevant for any purpose save that of showing bad character or propensity."  *Williams v. State*, 110 So. 2d 654, 662 (Fla. 1959).

THE COURT: Are we going to have [redacted] testify in front of everybody here?

[PROSECUTOR]: You might need to clarify, Your Honor (indiscern).

[COUNSEL]: Your Honor, aren't we kind of putting the cart before the horse getting all this testimony?  I mean[,] [t]he Court hasn't even ruled whether the [dangerous sexual felony offender sentencing] enhancement kicks in.  There's been no case law - -

. . . .

THE COURT: Alright well we're going to put that on the record.  I'm not going to argue that up here but I mean - - ultimately I mean I'm going to let her put it on.  I don't know that this case says it one way or the other.  It doesn't say no though.  Have you ever seen a case?

[PROSECUTOR]: No, Sir.

[COUNSEL]: I've never seen a case.  There would be some type of case law out there.

[PROSECUTOR]: There's there no case law that says that it's not admissible  - -

THE COURT: Alright.

[PROSECUTOR]: - - or that it's not allowed (indiscern).

THE COURT: Alright - - alright I don't - - I'm going to have - - I'm not going to have [redacted] testify in front of a room full of people on this subject matter.  So - -

THE BAILIFF: Clear?

THE COURT: I'm going to ask the courtroom be cleared.

(Whereupon, Bench Conference ends)

THE BAILIFF: You all wait outside please.

(Whereupon, courtroom is cleared and case resumes)

THE COURT: Alright we're here still on State versus David Wayne Norman CF10-8976.  Honestly I - - it's a public courtroom and I don't know to the extent that clearing the courtroom is permissible but I recall [redacted's] testimony during trial and as you can see she's noticeably

21

upset here today and I'm not going to obligate her to testify in front of
a bunch of folks that don't have anything to do with this case.

THE WITNESS: Thank you, Your Honor.

(Dkt. 10, Ex. 11 at 33–36).  Mr. Norman did not object to the courtroom closure or

request that the courtroom remain open during the witness's testimony.  The

prosecutor conducted her direct examination of the victim and defense counsel

cross-examined her without any further mention of the closure.

In both his state habeas petition and in his reply to the response in this case

Mr. Norman relies on *Waller v. Georgia*, 467 U.S. 39 (1984), to support his

allegation that the sentencing judge improperly closed the courtroom.  In *Waller*

the United States Supreme Court considered whether a defendant's Sixth

Amendment right to an open trial prevented the closure of a suppression hearing

*over the defendant's objection*.  Unlike in *Waller*, the closure Mr. Norman

challenges happened during sentencing and neither Mr. Norman nor his counsel

objected to the closure.  Consequently, any alleged error based on the closure was

not preserved for appellate counsel to raise on appeal.  Even assuming, *arguendo*,

that (1) the issue were preserved, (2) *Waller* applies, and (3) appellate counsel

performed deficiently by not raising this issue, Mr. Norman fails to demonstrate

that the outcome of his direct appeal would have been different if appellate counsel

had raised the issue.  Mr. Norman offers no explanation as to how closing the

courtroom during the witness's testimony at sentencing — despite the witness

having already testified publicly during the trial — prejudiced him.  Accordingly,

Mr. Norman fails to demonstrate that the state appellate court either unreasonably

applied controlling Supreme Court precedent or unreasonably determined the facts

by rejecting this claim of ineffective assistance of appellate counsel.  28 U.S.C.

§ 2254(d)(1), (d)(2).

(2) Collateral crime evidence

Mr. Norman alleges that his appellate counsel should have challenged on

direct appeal the sentencing judge's "allowing and considering testimony of a prior

crimes victim for requesting the Court to put him away based on a past crime that

Petitioner had already served the entire sentence and was not relevant to the case

before the Court."  (Dkt. 1 at 30).  While Mr. Norman's ineffective assistance of

appellate counsel claim is of federal constitutional dimension, the underlying basis

for Mr. Norman's ineffective assistance of counsel claim is the admissibility and

relevance of a collateral crimes witness's testimony under state law and state

evidentiary rules.  The state district court of appeal in rejecting this same claim of

ineffective assistance of appellate counsel in Mr. Norman's state habeas petition

has answered the question of what would have happened if appellate counsel had

raised this claim on direct appeal.  *See Herring*, 397 F.3d at 1354–55; *Callahan*,

427 F.3d at 932.  Accordingly, Mr. Norman shows neither deficient performance

nor resulting prejudice from appellate counsel's decision not to raise on appeal this

claim of trial court error.  This claim warrants no relief because the elements of

*Strickland* remain unsatisfied and Mr. Norman fails to meet his burden of proving

that the state appellate court either unreasonably applied controlling Supreme

Court precedent or unreasonably determined the facts in rejecting this claim of

ineffective assistance of appellate counsel.  *See* 28 U.S.C. § 2254(d)(1), (d)(2).

Accordingly, Mr. Norman's petition for the writ of habeas corpus (Dkt. 1) is

**DENIED**.  The Clerk must enter a judgment against Mr. Norman and **CLOSE** this

case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL IN FORMA PAUPERIS

Mr. Norman is not entitled to a certificate of appealability ("COA").  Under

Section 2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute

entitlement to appeal a district court's denial of his petition.  Rather, a district court

must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the

applicant has made a substantial showing of the denial of a constitutional right."

To merit a COA, Mr. Norman must show that reasonable jurists would find

debatable both the merits of the underlying claims and the procedural issues he

seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478

(2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to

show that reasonable jurists would debate either the merits of the claims or the

procedural issues, Mr. Norman is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Mr. Norman must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** at Tampa, Florida, on August 14, 2020.


WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE